UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 8700
Washington, D.C. 20530,

and

STATE OF TENNESSEE
Attorney General's Office
500 Charlotte Avenue
Nashville, Tennessee 37202,

    *Plaintiffs*,

        v.

VULCAN MATERIALS COMPANY
1200 Urban Center Drive
Birmingham, Alabama 35242,

SPO PARTNERS II, L.P.
591 Redwood Highway, Suite 3215
Mill Valley, California 94941,

and

AGGREGATES USA, LLC
3300 Cahaba Road, Suite 320
Birmingham, Alabama 35223,

    *Defendants*.

---

## COMPLAINT

Plaintiffs, the United States of America ("United States"), acting under the direction of the Attorney General of the United States, and the State of Tennessee, acting by and through the Attorney General of Tennessee, bring this civil antitrust action against Defendants to enjoin

Vulcan Materials Company's ("Vulcan") proposed acquisition of Aggregates USA, LLC ("Aggregates USA") from SPO Partners II, L.P. ("SPO Partners").  Plaintiffs complain and allege as follows:

## I.     INTRODUCTION

1.     Vulcan's proposed acquisition of Aggregate USA's quarries would secure Vulcan's control over the supply of coarse aggregate necessary to complete various construction projects in parts of east Tennessee and southwest Virginia.  Coarse aggregate is one of the primary materials used to build, pave, and repair roads and is used widely in other types of construction.  Coarse aggregate is an essential input in asphalt concrete, which is used to pave roads, and ready mix concrete, which is used to create bridges and is a structural element of many buildings.  Coarse aggregate is also needed for other phases of construction, such as the base layer of rock that provides a foundation for paved roads and large buildings.  Vulcan currently supplies coarse aggregate in east Tennessee and southwest Virginia and already holds a significant market share in each region.

2.     Vulcan and Aggregates USA are the primary suppliers of coarse aggregate for projects in parts of east Tennessee and southwest Virginia, together supplying nearly all of the coarse aggregate purchased directly by the Tennessee and Virginia Departments of Transportation ("DOT") or purchased by contractors for use in Tennessee and Virginia DOT projects.  Vulcan and Aggregates USA are also the two leading suppliers of coarse aggregate used in private construction projects in parts of east Tennessee and southwest Virginia.  The proposed acquisition would eliminate the head-to-head competition between Vulcan and Aggregates USA.  As a result, prices for coarse aggregate would likely increase significantly if the acquisition is consummated.

3.   The states of Tennessee and Virginia spend hundreds of millions of dollars on new construction and road maintenance projects each year. Without competing suppliers for the necessary inputs for road construction and other building projects, individuals, the states of Tennessee and Virginia, as well as federal and state taxpayers, would pay the price for Vulcan's control over these important markets. In light of these market conditions, Vulcan's acquisition of Aggregates USA's quarries would cause significant anticompetitive effects in the markets for coarse aggregate in parts of east Tennessee and southwest Virginia. Therefore, the proposed acquisition violates Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be enjoined.

## II.   THE PARTIES AND THE PROPOSED TRANSACTION

4.   Defendant Vulcan is incorporated in New Jersey with its headquarters in Birmingham, Alabama. Vulcan produces and sells coarse aggregate for the construction industry in 20 states as well as the District of Columbia. Vulcan also produces coarse aggregate in Mexico, which it distributes and sells at numerous terminals and yards along the Gulf Coast of the United States. In 2016, Vulcan reported net sales of $3.5 billion.

5.   Defendant SPO Partners is a Delaware limited partnership headquartered in Mill Valley, California. With more than $7 billion in assets under management, SPO Partners invests in a wide range of industries, including industrial materials, media, telecommunications, energy, power and real estate. SPO Partners acquired Aggregates USA in 2010.

6.   Defendant Aggregates USA is headquartered in Birmingham, Alabama. Aggregates USA produces and sells coarse aggregate in four states: Florida, Georgia, Tennessee and Virginia. In 2016, Aggregates USA reported net sales of approximately $124 million.

7.   On May 25, 2017, Vulcan announced a definitive agreement with SPO Partners to acquire Aggregates USA for approximately $900 million. The primary assets acquired are

Aggregates USA's 13 active quarries, including nine quarries in east Tennessee and one quarry in southwest Virginia, the equipment used to operate those quarries, and several inactive quarries in east Tennessee.

## III.   JURISDICTION AND VENUE

8. The United States brings this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. §§ 4 and 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

9. The State of Tennessee brings this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain Vulcan and Aggregates USA from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.  The State of Tennessee, by and through the Attorney General of Tennessee, brings this action as *parens patriae* on behalf of the citizens, general welfare, and the general economy of the State of Tennessee.

10. Defendants produce and sell coarse aggregate in the flow of interstate commerce. Defendants' activity in the production and sale of coarse aggregate substantially affects interstate commerce.  The Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

11. Defendants have consented to venue and personal jurisdiction in this judicial district.  Venue is therefore proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(c).

## IV.   TRADE AND COMMERCE

### A.   Coarse Aggregate is an Essential Input for Many Construction Projects

12. Coarse aggregate is a category of material used for construction projects and in various industrial processes.  Produced in quarries, mines, and gravel pits, coarse aggregate is

predominantly limestone, granite, or trap rock.  Different types and sizes of rock are needed to meet different specifications for use in asphalt concrete, ready mix concrete, industrial processes, and other products.  Asphalt concrete consists of approximately 95 percent coarse aggregate, and ready mix concrete is made of up of approximately 75 percent coarse aggregate.  Coarse aggregate thus is an integral input for road and other construction projects.

13. For each construction project, a customer establishes specifications that must be met for each application for which coarse aggregate is used.  For example, state DOTs, including the Tennessee and Virginia DOTs, set specifications for coarse aggregate used to produce asphalt concrete, ready mix concrete, and road base for state DOT projects.  State DOTs specify characteristics such as hardness and durability, size, polish value, and a variety of other characteristics.  The specifications are intended to ensure the longevity and safety of the projects that use coarse aggregate.

14. For Tennessee and Virginia DOT projects, to ensure that the stone for an application meets proper specifications, the respective DOTs qualify quarries according to the end uses of the coarse aggregate.  In addition, the Tennessee and Virginia DOTs test the coarse aggregate at various points: at the quarry before it is shipped; when the coarse aggregate is sent to the purchaser to produce an end product such as asphalt concrete; and after the end product has been produced.  Many cities, counties, commercial entities, and individuals in Tennessee and Virginia use their respective state DOT-qualified coarse aggregate specifications when building roads, bridges, and other construction projects in order to optimize longevity.

**B.     Transportation is a Significant Component of the Cost of Coarse Aggregate**

15. Coarse aggregate is priced by the ton and is a relatively inexpensive product, with prices typically ranging from approximately five to twenty dollars per ton.  A variety of

approaches are used to price coarse aggregate. For small volumes, coarse aggregate often is sold according to a posted price. For large volumes, customers typically either negotiate prices for a particular job or seek bids from multiple coarse aggregate suppliers.

16. In areas where coarse aggregate is locally available, it is transported from quarries to customers by truck. Truck transportation is expensive and, for construction projects located more than a few miles from a quarry, transportation costs can become a significant portion of the total cost of coarse aggregate.

### C. Relevant Markets

#### 1. State DOT-Qualified Coarse Aggregate is a Relevant Product Market

17. Within the broad category of coarse aggregate, different types and sizes of stone are used for different purposes. For instance, coarse aggregate qualified for use as road base may not be the same size and type of rock as coarse aggregate qualified for use in asphalt concrete. Accordingly, they are not interchangeable for one another and demand for each is separate. Thus, each type and size of coarse aggregate likely is a separate line of commerce and a relevant product market within the meaning of Section 7 of the Clayton Act.

18. State DOT-qualified coarse aggregate is coarse aggregate qualified by the state DOT for use in road construction in that particular state. State DOT-qualified coarse aggregate meets particular standards for size, physical composition, functional characteristics, end uses, and availability. A customer whose job specifies state DOT-qualified coarse aggregate cannot substitute non-DOT-qualified coarse aggregate or other materials, including coarse aggregate qualified by a different state DOT.

19. Although numerous narrower product markets exist, the competitive dynamic for most types of state DOT-qualified coarse aggregate is nearly identical, as a quarry can typically

produce all, or nearly all, types of state DOT-qualified coarse aggregate for a particular state. Therefore, most types of state DOT-qualified coarse aggregate for a particular state may be combined for analytical convenience into a single relevant product market for the purpose of evaluating the competitive impact of the acquisition.

20.  A small but significant increase in the price of state DOT-qualified coarse aggregate would not cause a sufficient number of customers to substitute to another type of coarse aggregate or another material so as to make such a price increase unprofitable. Accordingly, the production and sale of Tennessee DOT-qualified coarse aggregate and Virginia DOT-qualified coarse aggregate (hereinafter "DOT-qualified coarse aggregate") are distinct lines of commerce and relevant product markets within the meaning of Section 7 of the Clayton Act.

### 2.  The Relevant Geographic Markets are Local

21.  Coarse aggregate is a relatively low-cost product that is bulky and heavy. As a result, the cost of transporting coarse aggregate is high as compared to the value of the product.

22.  When customers seek price quotes or bids, the distance from the quarry to the project site or plant location will have a considerable impact on the selection of a supplier, due to the high cost of transporting coarse aggregate relative to the low value of the product. Suppliers know the importance of transportation cost to a potential customer's selection of a coarse aggregate supplier; they know the locations of their competitors, and they often will factor the cost of transportation from other suppliers into the price or bid that they submit.

23.  The primary factor that determines the area a supplier can serve is the location of competing quarries. When quoting prices or submitting bids, coarse aggregate suppliers will account for the location of the project site or plant, the cost of transporting coarse aggregate to

the project site or plant, and the locations of the competitors that might bid on a job. Therefore, depending on the location of the project site or plant, suppliers are able to adjust their bids to account for the distance other competitors are from a job.

### a.  The Knoxville area is a Relevant Geographic Market

24. Vulcan owns and operates eleven quarries that serve Knox, Loudon, Jefferson, and Grainger Counties in Tennessee as well as portions of surrounding counties (hereinafter referred to as the "Knoxville area"). Customers with plants or jobs in the Knoxville area may, depending on the location of their plant or job sites, also economically procure Tennessee DOT-qualified coarse aggregate from four quarries operated by Aggregates USA. Other more distant quarries cannot compete successfully on a regular basis for customers with plants or jobs in the Knoxville area because they are too far away and transportation costs are too great.

25. A small but significant post-acquisition increase in the price of Tennessee DOT-qualified coarse aggregate to customers with plants or job sites in the Knoxville area would not cause those customers to procure coarse aggregate from suppliers other than Vulcan and Aggregates USA in sufficient quantities so as to make such a price increase unprofitable. Accordingly, the Knoxville area is a relevant geographic market for the production and sale of Tennessee DOT-qualified coarse aggregate within the meaning of Section 7 of the Clayton Act.

### b.  The Tri-Cities area is a Relevant Geographic Market

26. Vulcan owns and operates four quarries that serve Washington, Sullivan, Carter and Unicoi Counties in Tennessee as well as portions of surrounding counties (hereinafter referred to as the "Tri-Cities area"). Customers with plants or jobs in the Tri-Cities area may, depending on the location of their plant or job site, also economically procure Tennessee DOT-qualified coarse aggregate from five quarries operated by Aggregates USA. Other more distant

quarries cannot compete successfully on a regular basis for customers with plants or jobs in the Tri-Cities area because they are too far away and transportation costs are too great.

27. A small but significant post-acquisition increase in the price of Tennessee DOT-qualified coarse aggregate to customers with plants or job sites in the Tri-Cities area would not cause those customers to procure coarse aggregate from suppliers other than Vulcan and Aggregates USA in sufficient quantities so as to make such a price increase unprofitable. Accordingly, the Tri-Cities area is a relevant geographic market for the production and sale of Tennessee DOT-qualified coarse aggregate within the meaning of Section 7 of the Clayton Act.

### c. The Abingdon area is a Relevant Geographic Market

28. Vulcan owns and operates one quarry that serves parts of Washington County in Virginia and portions of surrounding counties (hereinafter referred to as the "Abingdon area"). Customers with plants or jobs in the Abingdon area may, depending on the location of their plant or job sites, also economically procure Virginia DOT-qualified coarse aggregate from a quarry operated by Aggregates USA. Other more distant quarries cannot compete successfully on a regular basis for customers with plants or jobs in the Abingdon area because they are too far away and transportation costs are too great.

29. A small but significant post-acquisition increase in the price of Virginia DOT-qualified coarse aggregate to customers with plants or job sites in the Abingdon area would not cause those customers to procure coarse aggregate from suppliers other than Vulcan and Aggregates USA in sufficient quantities so as to make such a price increase unprofitable. Accordingly, the Abingdon area is a relevant geographic market for the production and sale of Virginia DOT-qualified coarse aggregate within the meaning of Section 7 of the Clayton Act.

### D. Vulcan's Acquisition of Aggregates USA is Anticompetitive

30. Vigorous competition between Vulcan and Aggregates USA on price and customer service in the production and sale of DOT-qualified coarse aggregate has benefitted customers in the Knoxville, Tri-Cities, and Abingdon areas (the "Relevant Areas"), all of which face similar competitive conditions.

31. The competitors that could constrain Vulcan and Aggregates USA from raising prices on DOT-qualified coarse aggregate in the Relevant Areas are limited to those who are qualified by the Tennessee and Virginia DOTs to supply coarse aggregate and can economically transport the coarse aggregate into these areas.

32. Since the Relevant Areas are each exclusively served today by Vulcan and Aggregates USA, the proposed acquisition will reduce from two to one the number of suppliers of DOT-qualified coarse aggregate in each of those areas. Further, the proposed acquisition will substantially increase the likelihood that Vulcan will unilaterally increase the price of DOT-qualified coarse aggregate to a significant number of customers in the Relevant Areas.

33. For many customers, a combined Vulcan and Aggregates USA will have the ability to increase prices for DOT-qualified coarse aggregate. The combined firm could also decrease service for these same customers by limiting availability or delivery options. DOT-qualified coarse aggregate producers know the distance from their own quarries or yards and their competitors' quarries to a customer's job site. Generally, because of transportation costs, the farther a supplier's closest competitor is from a job site, the higher the price and margin that supplier can expect for that project. Post-acquisition, in instances where Vulcan and Aggregates USA quarries or yards are the closest locations to a customer's project, the combined firm, using

the knowledge of its competitors' locations, will be able to charge such customers higher prices or decrease the level of customer service.

34. The proposed acquisition will substantially lessen competition in the market for the production and sale of DOT-qualified coarse aggregate in the Relevant Areas, which is likely to lead to higher prices and reduced customer service for consumers of such products, in violation of Section 7 of the Clayton Act.

### E. Difficulty of Entry

35. Timely, likely, and sufficient entry in the production and sale of DOT-qualified coarse aggregate in the Relevant Areas is unlikely, given the substantial time and cost required to open a quarry.

36. Quarries are particularly difficult to locate and permit. First, securing the proper site for a quarry is difficult and time-consuming. Finding land with the correct rock composition requires extensive investigation and testing of candidate sites, as well as the negotiation of necessary land transfers, leases, and/or easements. Further, the location of a quarry close to likely job sites is extremely important due to the high cost of transporting coarse aggregate. Once a location is chosen, obtaining the necessary permits is difficult and time-consuming. Attempts to open a new quarry often face fierce public opposition, which can prevent a quarry from opening or make opening it much more time-consuming and costly. Finally, even after a site is acquired and permitted, the owner must spend significant time and resources to prepare the land and purchase and install the necessary equipment.

37. Because of the cost and difficulty of establishing a quarry, entry will not be timely, likely or sufficient to mitigate the anticompetitive effects of Vulcan's proposed acquisition of Aggregates USA.

## V. VIOLATION ALLEGED

38. Vulcan's proposed acquisition of Aggregates USA likely will substantially lessen competition in the production and sale of DOT-qualified coarse aggregate in the Relevant Areas, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

39. Unless enjoined, the proposed acquisition likely will have the following anticompetitive effects, among others:

(a) actual and potential competition between Vulcan and Aggregates USA in the market for the production and sale of DOT-qualified coarse aggregate in the Relevant Areas will be eliminated; and

(b) prices for DOT-qualified coarse aggregate likely will increase and customer service likely will decrease.

## VI. REQUESTED RELIEF

40. Plaintiffs request that this Court:

(a) adjudge and decree that Vulcan's acquisition of Aggregates USA would be unlawful and violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b) preliminarily and permanently enjoin and restrain the Defendants and all persons acting on their behalf from consummating the proposed acquisition of Aggregates USA by Vulcan, or from entering into or carrying out any other contract, agreement, plan, or understanding, the effect of which would be to combine Vulcan with Aggregates USA;

(c) award Plaintiffs their costs for this action; and

(d) award Plaintiffs such other and further relief as the Court deems just and proper.

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____
MAKAN DELRAHIM
Assistant Attorney General

_____
MARIBETH PETRIZZI (D.C. Bar #435204)
Chief
Defense, Industrials, and Aerospace Section

_____
ANDREW C. FINCH
Principal Deputy Assistant Attorney General

_____
STEPHANIE A. FLEMING
Assistant Chief
Defense, Industrials, and Aerospace Section

_____
BERNARD A. NIGRO JR. (D.C. Bar #412357)
Deputy Assistant Attorney General

_____
JAY D. OWEN
Stephen A. Harris
Christine A. Hill (D.C. Bar #461048)
Attorneys
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street, N.W., Suite 8700
Washington, D.C. 20530
(202) 598-2987
jay.owen@usdoj.gov

_____
PATRICIA A. BRINK
Director of Civil Enforcement

Dated: December 22, 2017

FOR PLAINTIFF STATE OF TENNESSEE:

HERBERT H. SLATERY III
Attorney General and Reporter

_____
VICTOR J. DOMEN, JR.
Senior Counsel
Office of the Tennessee Attorney General
500 Charlotte Avenue
Nashville, TN 37202
Phone: 615-(253)-3327
vic.domen@ag.tn.gov


Dated: December 22, 2017